The Honorable Stanley Russ State Senator P.O. Box 787 Conway, Arkansas 72032
Dear Senator Russ:
This is in response to your request for an opinion on several questions concerning the issuance of and security for post-dated warrants and other obligations of school districts. Specifically, you have attached correspondence with your request which sets out six separate questions in this regard.
In responding to the questions posed it is necessary to set out the relevant statutory provision, which is A.C.A. § 6-20-402(d) (1987). It provides in pertinent part as follows:
 As additional security for the payment of any postdated warrant or current indebtedness of a school district, the district may authorize the State Board of Education to cure any delinquencies in payment by withholding state aid due the district under § 6-20-301 et seq. Such authorization shall be given at the time the warrant is issued or the current indebtedness is incurred and shall be given in such manner and in such form as the State Board of Education shall prescribe. If the debtor district has authorized withholding of state aid, whenever the payee or the designated paying agent for receipt of the district's payments does not receive payment when due pursuant to the authorizing documents, the payee or paying agent will be entitled to payment from the withheld state aid in an amount sufficient to cure the payment deficiency upon notifying the Director of the General Education Division and the superintendent of the district by telephone, facsimile, or other similar communication, followed by written verification. Unless the director determines that payment has been made by the district and there is no longer a payment deficiency, the director shall withhold from the next distribution of state aid and remit to the payee or paying agent an amount sufficient to cure the deficiency. In the event the amount next due to be distributed to the delinquent district is not sufficient to cure the delinquency, the director shall continue to withhold state aid as due and remit it to the payee or paying agent until the payment deficiency has been cured.
Your request notes initially that under A.C.A. § 6-20-402(d), it appears that "if all of the applicable authorization and notification requirements set forth in A.C.A. § 6-20-402(d) have been satisfied, the Arkansas Department of Education ("ADE") must use a district's state aid (which includes, for the district's 1995-96 school year, Minimum Foundation Program Aid "MFPA") distributable in the subsequent fiscal year of the district ("school year") to cure delinquent payments due on warrants issued in a prior school year."[1] The following example is then proposed:
 In school year 1993-94, the district issues a warrant to Bank to finance the purchase of a school bus. A warrant payment is due on September 1, 1995 (which is in the district's 1995-96 school year). The Bank has properly followed the procedure set forth in Ark. Code Ann. § 6-20-402(d) whereby the district authorizes the ADE to withhold, upon notification of delinquency, state aid (including MFPA) due the district and pay same directly to Bank until the deficiency is cured ("Authorization"). The district defaults on its warrant payment and Bank notifies ADE to pay the district's state aid to Bank until the deficiency is cured.
Your first two questions, which relate to the example above, are as follows:
 1. Must the ADE and the Arkansas Legislative Audit ("ALA") allow MFPA distributable to a district's school year subsequent to the school year in which the district's warrant payments are due to be used to pay the warrant payments in the event the warrant payments are not made when scheduled?
 2. Under the aforesaid example, can the ADE use the district's MFPA distributable in the 1995-96 school year to pay the delinquent warrant payment.
I am uncertain exactly as to the nature of your questions. The correspondence attached to your request notes initially that it appears that the ADE "must" use a district's state aid distributable in the subsequent fiscal year of the district to cure delinquent payments due on warrants issued in a prior school year. I must note, in response to this question, that the relevant statute does not speak in terms of previous years and subsequent years. It merely states that if an obligation which is subject to the withholding becomes delinquent, the Director shall withhold from the "next" distribution of state aid. And if the delinquency is not thereby satisfied, the Director shall "continue to withhold state aid as due. . . ." In my opinion all that the statute requires is that the state aid still be in the hands of the Director, and that it not have yet been distributed to the school district. If still in the hands of the Director (or State Treasurer) the Director could withhold the aid in the face of a properly executed authorization and notice of delinquency. There are no limits in the statute as to when, and from what years, the aid is withheld. I can state, however, in response to your first two questions, that the statute in question, (A.C.A. §6-20-402(d)), contemplates that state aid from subsequent years can be used to satisfy delinquencies occurring on obligations incurred in prior years and must be used if this is the "next distribution" of state aid after the notice of delinquency is given.
Of course, the particular "authorization" given by school district may contain additional terms which will apply to the transaction. The statute says the authorizations "shall be given in such manner and in such form as the State Board of Education shall prescribe. . . ." I have not been provided with any particular form or provisions in this regard. Additionally, I am not aware of the manner, specifically the timeliness or schedule, of the distribution of state aid from the Director to the school districts. Each of these facts may affect the answers to your questions. Whether subsequent years state aid "must" be used (instead of or in lieu of current years aid) will depend upon whether the current year's aid has already been distributed, and on any other relevant provisions in the authorization form. The Director, upon being presented with a valid notice of delinquency, shall withhold from the "next" distribution of state aid. This next distribution may be from a current year or subsequent year depending upon all the facts.
Your third question is as follows:
 Ark. Code Ann. § 6-20-402(c)(3) provides that any current indebtedness (as defined in Ark. Code Ann. § 6-20-402(c)(3)) of a district can be secured by a pledge of the district's revenue receipts of the district for the school year in which the debt is incurred. This right is in addition to the rights under Ark. Code Ann. § 6-20-402(d) of the holder of warrants or of other current indebtedness obligations of the district to receive MFPA proceeds in the event a delinquency in payments owed by the district.
 3. In a priority contest between a revolving loan creditor with a perfected security interest in the district's MFPA and the holder of the district's warrant (assuming that the authorization and notification procedures in Ark. Code Ann. § 6-20-402(d) have been followed), to whom would the ADE first be obligated to pay the district's MFPA under the provisions of § 6-20-402(c)(3) and (d)?
I assume that your question is premised upon the assumption that the revolving loan creditor does not have an authorization executed under §6-20-402(d) for the "withholding" of state aid. If that were the case, if the revolving loan creditor and the holder of the warrant each have such an authorization, the statute clearly provides that "the director shall make payment to payees or paying agents in the order of receipt of notices of the delinquency." A.C.A. § 6-20-402(d) (last sentence). I assume your question posits that the revolving loan creditor merely has a perfected security interest in the "revenue receipts" of the district, which are defined as including "state . . . funding." A.C.A. §6-20-401(3)(C). In response to your question, ADE's obligation may to some degree depend upon the terms of the revolving loan agreement and the security agreement executed therewith. I cannot offer a definite opinion on this question of contract. I will note, however, that it appears the Director's obligation to withhold state aid in light of a valid authorization under A.C.A. § 6-20-402(d) arises by operation of law, i.e. by operation of the statute itself. If properly notified of a delinquency, the Director "shall" withhold the aid and "remit" it to the paying agent, whereas, it may take the institution of a legal action of the part of the revolving loan creditor with a security interest in order to execute on its security agreement. Again, however, the question cannot be answered in the abstract, without reference to all the surrounding facts.
Your fourth question is as follows:
 It also appears that, under Ark. Code Ann. § 6-20-402(c)(2), the bonded indebtedness of a district is not included in a district's current indebtedness. Therefore, it appears that Ark. Code Ann. § 6-20-402
(d) only applies to warrants and current indebtedness, not bonded indebtedness, and under Ark. Code Ann. § 6-20-402(d) the ADE would not be allowed to pay the district's MFPA to the holder of bonded indebtedness.
 4. Does Ark. Code Ann. § 6-20-402(d) allow the ADE to pay a district's MFPA to a holder of capital improvement bonds issued by the district?
In my opinion nothing in A.C.A. § 6-20-402(d) authorizes the ADE to pay a district's MFPA to a holder of capital improvement bonds issued by the district. This is not to say, however, that the ADE is in no instance authorized to take the action you suggest. You have noted that bonded indebtedness of a district is not included in a district's current indebtedness, and A.C.A. § 6-20-402(c)(2) is cited for this proposition. This statutory provision states that current indebtedness is not included in the term "bonded indebtedness" and not vice versa, as your request suggests. Section 6-20-402(d), the provision which allows withholding of aid, applies to secure payment of "postdated warrants" and "current indebtedness." The term "current indebtedness" is defined at A.C.A. §6-20-401(1) as: "a debt obligation incurred by a school district for the purpose of paying maintenance or general operation expenses for the fiscal year in which the debt is incurred or for a purpose for which a postdated warrant, installment contract, or lease purchase agreement may be issued." It is my opinion that this definition does not generally include bonded indebtedness. It is therefore my opinion that nothing in A.C.A. §6-20-402(d), which applies to postdated warrants and "current indebtedness," operates to authorize ADE to remit MFPA to capital improvement bond holders of the district.
This is not to say, however, that no other provision of law or contract authorizes this payment. Again, this question cannot be answered in the abstract. Any other relevant provision of law or any relevant trust indenture would have to be scrutinized in order to arrive at a definite conclusion with regard to any particular bond issue.
Your fifth question is as follows:
 If the answer to Opinion Request No. 4 is "yes," in a priority dispute between a bondholder and the warrant holder, would the first creditor to notify ADE of a delinquency pursuant to Ark. Code Ann. § 6-20-402(d) have priority to the district's MFPA?
Because the answer to your fourth question was not "yes," and answer to your fifth question is unnecessary.
Your sixth and final question is as follows:
 As to a district's sources of income other than MFPA and dedicated millages, could the state under Ark. Code Ann. § 6-20-816(b) (which provides that in the event of a default or threatened default of a district's indebtedness the state may establish procedures to alleviate or avoid the default) preempt otherwise applicable perfection and priority law and cure the district's delinquencies with assets in which another creditor has a prior, perfected security interest?
As an initial matter I assume the question was intended to refer not to A.C.A. § 6-20-816(b) (which prohibits and makes criminal the charging of fees on revolving loans made from the state "Revolving Loan Fund"), but to A.C.A. § 6-20-814(b) which, in addition to A.C.A. § 6-20-814(a) provide as follows:
 (a) In the event of a default or threatened default in the payment of the principal of or interest on any revolving loan bonds or revolving loan certificates of indebtedness, the Director of General Education is authorized and directed to withhold from the apportionment otherwise due any borrowing school district, moneys in amounts sufficient to obviate or avoid any default or threatened default.
 (b) The Chief Fiscal Officer of the State shall prescribe the method of procedure to be followed in any such event to obviate or avoid any default or threatened default.
The statute above is found in a subchapter entitled "Revolving Loan Program — General Provisions." The subchapter has reference to a state funded "Revolving Loan Program" from which school district may borrow, from the State, moneys for certain enumerated purposes. This subchapter, and accordingly, A.C.A. § 6-20-814, have absolutely no applicability to any indebtedness other than an indebtedness owed by a school district to the State under the Revolving Loan Program. Assuming your question refers to such loans, and any action taken by the Director and the Chief Fiscal officer to avoid or obviate a default on such a loan, the question of whether such action could "preempt" otherwise applicable perfection and priority law, so as to adversely affect the interests of other creditors would again, depend upon all of the facts and circumstances surrounding the rights of the creditors involved. The question cannot be answered in the abstract.
The Attorney General is required under A.C.A. § 25-16-706 to provide his opinion to the General Assembly upon the constitutionality of any proposed bill. He is precluded, however, from engaging in the private practice of law. A.C.A. § 25-16-701. Therefore, this opinion is not provided for the benefit of private third parties and should not be relied upon nor offered for that purpose.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Although it is noted, in the correspondence attached to your request, that Act 917 of 1995, beginning with the 1996-97 school year, replaces "Minimum Foundation Program Aid" with other state aid, it is indicated that for purposes of the opinion request "MFPA" shall mean all state aid distributable to the district, including but not limited to MFPA and its replacement. I will accept this proposition for purposes of the request, but must note that it is not at all clear that the provisions of A.C.A. § 6-20-402(d), which refer to the withholding of "state aid due the district under § 6-20-301 et seq." will apply to allow withholding of the replacement for MFPA. See Act 917 of 1995, § 15 which specifically repeals §§ 6-20-301 — 318.